**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

VICTOR STEELE,

      Plaintiff-Appellant,

v.

FEDERAL BUREAU OF PRISONS;
WARDEN HOLT; CHRISTINE
COOPER; DARYL KOSIAK, and
UNKNOWN BOP PERSONS,

      Defendants-Appellees.

No. 02-1492

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### (D.C. No. 01-B-2289 (MJW))

---

Submitted on the briefs [*]:

Victor Steele, pro se.

John W. Suthers, United States Attorney, and John M. Hutchins, Assistant United States Attorney, Denver, Colorado, for Defendants-Appellees.

---

Before **HARTZ**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**BALDOCK** , Circuit Judge.

A provision of the Prison Litigation Reform Act (PLRA) directs that "[n]o action shall be brought with respect to prison conditions" until a prisoner exhausts his available administrative remedies. 42 U.S.C. § 1997e(a) (amended by Pub. L. 104-134, Title I, § 101(a), 110 Stat. 1321-71 (1996)). In this case, the district court dismissed the lost-property claims of plaintiff Victor Steele, a federal prisoner proceeding pro se and in forma pauperis, for failure to exhaust administrative remedies. We affirm the judgment of the district court and, in doing so, resolve several procedural issues relating to PLRA exhaustion.

I.

For disciplinary reasons, Steele was taken from his cell and placed in the special housing unit at the United States Penitentiary in Florence, Colorado. Bureau of Prisons (BOP) employees detained the personal items he left in his cell. Upon his release from the special housing unit, Steele's belongings were missing. Steele, who valued his missing property at $247.10, filed an administrative tort claim alleging the loss of property within a BOP institution as a result of BOP staff negligence. He did not commence a grievance under the separate administrative procedure for complaints about prison conditions. *See Hylton v.*

-2-

*Fed. Bureau of Prisons*, No. CV 00-5747(RR), 2002 WL 720605, at *2 (E.D.N.Y. Mar. 11, 2002) (describing difference between grievance processes for prison-condition complaints and for tort claims). The BOP offered to settle the administrative tort claim for $9.30, but Steele declined the offer.

Steele then filed this action in district court, using the form for prisoners' civil-rights complaints provided by the District of Colorado. On the complaint form, he answered "yes" to a question asking whether he had "exhausted available administrative remedies." R., Doc. 4 at 5. He did not "explain the steps taken," as directed, but he did attach documents relating to his tort claim for proof of exhaustion. *Id.* at 5, 5a-5c.

The complaint, construed liberally, asserted a tort claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671-80, and a civil-rights claim brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). It named as defendants the BOP and BOP employees Warden Holt, Christine Cooper (the paralegal specialist who conveyed the settlement offer to Steele), Daryl Kosiak (the regional counsel who authorized the settlement offer), and other unknown BOP personnel. Alleging that defendants abused the tort-claim process and conspired to violate his property rights, Steele sought compensatory damages or replacement of the missing property.

Defendants moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). They asserted that the court lacked subject matter jurisdiction over the FTCA claim because the government had not waived its sovereign immunity in connection with the detention of goods by law enforcement officers. Concerning the *Bivens* claim, defendants argued that Steele had failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a), and therefore could not pursue the claim in federal court. In support of their motion, defendants submitted affidavits and other evidentiary material which confirmed that Steele had filed an administrative tort claim, but had not pursued administrative remedies concerning a prison-conditions claim.

In response, Steele did not claim that he had completed the grievance process applicable to a prison-conditions claim or that he had been prevented from participating in the process. Instead, he asserted that the grievance procedure is generally inaccessible to inmates because the mandatory first step requires cooperation of a staff member. He contended that the court should consider the exhaustion requirement satisfied due to a combination of factors: staff's lack of incentive to process a grievance, administrative time limitations, and his following of instructions in connection with the administrative tort claim.

On referral, the magistrate judge recommended that the dismissal motion be granted for nonexhaustion, without specifying the applicable provision of the federal rules of civil procedure. As an additional ground, the magistrate judge recommended dismissal with prejudice for failure to state a constitutional violation. After conducting a de novo review of the recommendation, the district court adopted it and dismissed the entire action with prejudice. Steele filed this appeal.

II.

The Supreme Court has held that § 1997e(a) makes exhaustion "mandatory" for all "inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The administrative review by correction officials is intended "to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. It should correct problems in meritorious cases, "filter out some frivolous claims," and, in any event, facilitate adjudication by "clarif[ying] the contours of the controversy." *Id.* at 525 (quotation omitted).

Under the plain statutory language and the Supreme Court case law, the substantive meaning of § 1997e(a) is clear: "resort to a prison grievance process must precede resort to a court," *id.* at 529. The procedural framework applicable to § 1997e(a), however, is not so apparent. We take this opportunity to resolve

procedural and practical aspects of the PLRA which are not directly addressed in either the statute or Supreme Court case law. [1]

A.

At the outset, we consider whether a failure to meet the exhaustion requirement of § 1997e(a) deprives the federal courts of subject matter jurisdiction over a prisoner's claim. Every federal appellate court faced with the issue has concluded that the § 1997e(a) exhaustion requirement is not a jurisdictional bar. *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003); *Casanova v. Dubois*, 289 F.3d 142, 147 (1st Cir. 2002) (*Casanova I*); *Ali v. District of Columbia*, 278 F.3d 1 (D.C. Cir. 2002); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000); *Wright v. Hollingsworth*, 260 F.3d 357, 358 n.2 (5th Cir. 2001); *Massey v. Helman*, 196 F.3d 727, 732 (7th Cir. 1999); *Nyhuis v. Reno,* 204 F.3d 65, 69 n.4 (3d Cir. 2000); *Curry v. Scott*, 249 F.3d 493, 501 n.2 (6th Cir. 2001); *see also Basham v. Uphoff*, No. 98-8013, 1998 WL 847689, at *3 (10th Cir. Dec. 8, 1998) (unpublished).

---

[1] We note the comment of a district court that "the PLRA's enigmatic exhaustion requirement, intended to reduce the perceived burdensome flow of prisoner litigation, has had the perverse effect of generating extensive litigation. Indeed, the law on the narrow subject of the PLRA's exhaustion requirements continues to evolve month by month." *McCoy v. Goord*, 255 F. Supp. 2d 233, 240 (S.D.N.Y. 2003) (footnotes, quotations, and brackets omitted).

There are numerous reasons for the circuit courts' unanimity.   The most compelling lies within the structure of the statute itself.  Through enactment of § 1997e(a), Congress required exhaustion of all available remedies.  However, another PLRA provision, 42 U.S.C. § 1997e(c)(2), gives district courts the power to dismiss some claims on their merits even when administrative remedies have not been exhausted. [2] "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for Better Env't*  , 523 U.S. 83, 94 (1998) (quotation omitted).     "If exhaustion under the PLRA were jurisdictional, [section 1997e(c)(2)] and the power it gives district courts would make no sense."        *Nyhuis,* 204 F.3d at 70 n.4.  "Because the existence of jurisdiction is a prerequisite to the evaluation and dismissal of a claim on its merits, it follows that that jurisdiction is not divested by the failure to exhaust administrative remedies."        *Chelette* , 229 F.3d at 687.

---

[2]     Section 1997e(c) provides:

In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

Another reason for determining that § 1997e(a) is not jurisdictional arises from an application of the Supreme Court's decision in *Weinberger v. Salfi*, 422 U.S. 749 (1975), in which the Court held that a "statute requiring exhaustion of administrative remedies may be jurisdictional if it is 'more than a codified requirement of administrative exhaustion' and contains 'sweeping and direct' statutory language that goes beyond a requirement that only exhausted actions be brought." *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998) (quoting *Weinberger*, 422 U.S. at 757). Section 1997e(a) "contains neither the sweeping and direct language of [the statute at issue in *Weinberger* ] nor that statute's explicit bar to district court jurisdiction." *Wright v. Morris*, 111 F.3d 414, 421 (6th Cir. 1997).

Agreeing with our sister circuits, we hold that § 1997e(a) simply codifies the administrative exhaustion doctrine in order to "govern the timing of federal-court decisionmaking," *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The provision "'does not defeat federal-court jurisdiction, it merely defers it.'" *Thomas v. Woolum,* 337 F.3d 720, 730 (6th Cir. 2003) (quoting *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 532 (1982) (Powell, J., dissenting)).

As a consequence, a motion under Fed. R. Civ. P. 12(b)(1) is not an appropriate avenue for questioning an inmate's exhaustion of administrative remedies. Rule 12(b)(1) is designed "for challenges to the court's subject-matter

jurisdiction." *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003). It does not apply to issues of exhaustion under PLRA.

B.

The next question concerns the procedural characterization of exhaustion: is it an essential allegation of a prisoner's claim or is it a defendant's affirmative defense? Because we believe that a prisoner must plead exhaustion in his complaint, we part company with the many circuits which have held that exhaustion is an affirmative defense to be raised and proven by a defendant. *See e.g. Wyatt,* 315 F.3d at 1117 (collecting cases). [3]

Our contrary conclusion is compelled by the Supreme Court's emphasis on the mandatory nature of exhaustion, implications of the PLRA statutory scheme, the structure of the Rules of Civil Procedure and our own precedent. We decline to characterize exhaustion as an affirmative defense because it cannot be waived. Under Federal Rule of Civil Procedure 8(c), a "[f]ailure to plead an affirmative defense results in a waiver of that defense." *Bentley v. Cleveland County Bd. of*

---

[3] Cases holding that § 1997e(a) exhaustion is an affirmative defense include *Wyatt*, 315 F.3d at 1119; *Casanova v. Dubois*, 304 F.3d 75, 77 n.3 (1st Cir. 2002) (*Casanova II*); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001); *Jackson v. District of Columbia*, 254 F.3d 262, 267 (D.C. Cir. 2001) (by implication); *Massey,* 196 F.3d at 735; *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Although we disagree with the procedural characterization reached by these cases, they provide helpful analyses of other aspects of exhaustion.

*County Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994). If affirmative defenses are "not affirmatively pleaded, asserted with a motion under Rule 12(b) or tried by the express or implied consent of the parties, such defenses are deemed to have been waived and may not thereafter be considered as triable issues in the case." *Radio Corp. of Am. v. Radio Station KYFM, Inc*., 424 F.2d 14, 17 (10th Cir. 1970).

In other words, classification of the PLRA's exhaustion requirement as an affirmative defense means that defendants may choose to ignore it for their own strategic reasons. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("Filing suit before exhausting prison remedies . . . is not the sort of defect that judges must notice even if the defendant is happy to contest the suit on the merits."). This court, however, has warned against "trivializ[ing] the Supreme Court's holding . . . that exhaustion is now mandatory." *Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002). In fact, we have perhaps implicitly concluded that PLRA exhaustion is not an affirmative defense in *Beaudry v. Corrections Corp. of America*, 331 F.3d 1164, 1168 n.5 (10th Cir. 2003), *petition for cert. filed* (U.S. Oct. 18, 2003) (No. 03-7129), by approving a district court's resolution of an exhaustion issue raised "on the eve of trial."

Further, we see no inequity in placing the burden of pleading exhaustion on the prisoner. "[C]onsiderations of policy [and] fairness" are relevant to classifying a matter as an affirmative defense. Charles Alan Wright and Arthur R. Miller,

-10-

5 Fed. Prac. & Proc. Civ. 2d § 1271, at 444 (1990). According to those authors, "'[f]airness'" is "shorthand" for a "judgment that all or most of the relevant information on a particular element of a claim is within the control of one party or that one party has a unique nexus with the issue in question and therefore that party should bear the burden of affirmatively raising the matter." *Id.* at 445.

The prisoner outlines his own grievance in the prison administrative system and frames his allegations in federal court. Consequently, it is the prisoner who can best assert the relationship between his administrative grievance and court filing. A showing of exhaustion does not rely solely on the maintenance of an efficient filing and retrieval system. In fact, it is more dependent upon insight into the administrative claim and its relationship with the federal suit. We disagree with the Third Circuit's determination in *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002), "that it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion."

For these reasons, we cannot view § 1997e(a) exhaustion as an affirmative defense to be specially pleaded or waived. Instead, we conclude that § 1997e(a) imposes a pleading requirement on the prisoner.

Thus, a complaint "that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998). A prisoner must: (1) plead

-11-

his claims with "a short and plain statement . . . showing that [he] is entitled to relief," in compliance with Fed. R. Civ. P. 8(a)(2), and (2) "attach[] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome," *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) (citing *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998)).

These requirements are consistent with both the PLRA's provisions and generally applicable Federal Rules of Civil Procedure. Every plaintiff must offer "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)) (footnote omitted). Every prisoner must comply with the exhaustion requirement of § 1997e(a). A comprehensible statement of the prisoner's claim, coupled with supporting information on prison grievance proceedings, will best effectuate the purposes of § 1997e(a) by affording a basis for the district court's *sua sponte* review of a prison-condition complaint. *See* 28 U.S.C. § 1915(e)(2) (concerning review of *in forma pauperis* actions); 28 U.S.C. § 1915A (requiring courts to screen prisoner complaints "as soon as practicable after docketing," to determine, among other things, whether they state claims on which relief may be granted);

-12-

42 U.S.C. § 1997e(c)(1) (requiring courts to dismiss actions which fail to state a claim, even without a defense motion).

We emphasize that the requirements listed above do not amount to a judicially-created heightened pleading requirement, in contravention of the Supreme Court holding in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). In that case, the Court held that a plaintiff's employment discrimination complaint need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Swierkiewicz*, at 515. The Court explained that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," such as the express Rule 9(b) requirement of "particularity in all averments of fraud or mistake." *Id.* at 513. "A requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Id.* at 515 (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).

Here, however, the need to plead exhaustion with specificity "does not take its authority from the Federal Rules of Civil Procedure, but from the Prison Litigation Reform Act." *Baxter v. Rose*, 305 F.3d 486, 490 (6th Cir. 2002). We agree with the Sixth Circuit that

[t]he PLRA established an *unique* procedure under which the court, not the parties, is required to evaluate whether a claim on which relief may be granted is stated. Unlike in typical civil litigation, courts discharging their screening duties under the PLRA must not wait until the complementary rules of civil procedure, such as civil discovery or responsive motions, are implemented by the defendant. While the Federal Rules of Civil Procedure shift the burden of obtaining clarity to the defendant, the PLRA shifts that burden to the courts.

*Id.* Requiring prisoners to provide courts with information on prison grievance proceedings "effectuates the PLRA's screening requirement. Courts would be unable to screen cases effectively if plaintiffs were able, through ambiguous pleading, to avoid dismissal of claims on which relief could not be granted." *Id.* In short, Congress, not this court, has required a prisoner to plead specific exhaustion information.

The pleading requirement we announce today will not result in a major change in the practice of district courts in this Circuit. We take judicial notice of the forms supplied by the district courts for prisoner civil-rights complaints. *See* Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding"). Each of the forms asks for the prisoner to provide a clear statement of the important facts supporting his claim and to explain his attempts to exhaust available administrative remedies. Several forms instruct the prisoner to attach proof of exhaustion; others ask the prisoner to describe the steps taken. Thus, the district courts have routinely expected prisoners to provide a short and plain statement of their claims, as well as specific information on exhaustion.

We simply underscore the mandate of § 1997e(a). "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e." *Knuckles El*, 215 F.3d at 642. To ensure compliance with the statute, a prisoner must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity. These requirements facilitate the district court's *sua sponte* review on the exhaustion issue.

There will be cases, however, in which the correct resolution of an exhaustion issue will not become apparent during the district court's screening process. For instance, a prisoner may allege exhaustion and either attach ambiguous documents arising from the grievance process or submit a misleading declaration. If the case is not otherwise subject to dismissal on its face as "frivolous, malicious" or because it "fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief," the case should go forward. 42 U.S.C. § 1997e(c). But § 1997e(a) "gives prisons and their officials a valuable entitlement–the right *not* to face a decision on the merits." *Perez*, 182 F.3d at 536. Defendants with a colorable argument based on lack of exhaustion, therefore, may raise it in a dispositive motion, to be addressed promptly by the court. *See id.*

The proper procedural mechanism for such a dispositive motion will vary with the circumstances of the case. In many instances, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) will be appropriate. As we have stated, the final administrative decision is central to a prisoner's claim, so that the prisoner is required to plead exhaustion and provide evidence of exhaustion. If he does not, he has failed to state a claim and the complaint is vulnerable to dismissal.

In deciding a Rule 12(b)(6) motion based on exhaustion, the court may consider the attached administrative materials. *See Oxendine v. Kaplan,* 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that court may look both to complaint itself and to any documents attached as exhibits to complaint). And if the prisoner "does not incorporate by reference or attach" the administrative decision, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id*. at 1385. Accordingly, the court may determine from the complaint, as supplemented by administrative

documents or a declaration, that a prisoner has failed to exhaust his prison remedies and may dismiss the action pursuant to Rule 12(b)(6). [4]

In other cases, however, a factual dispute may preclude dismissal under Rule 12(b)(6). Exhaustion may not be clear from the prisoner's complaint, supporting materials, and the legal argument. A motion for summary judgment limited to the narrow issue of exhaustion and the prisoner's efforts to exhaust would then be appropriate. *See McCoy v. Goord*, 225 F. Supp. 2d 233, 251 (S.D.N.Y. 2003). If the defendant files a motion to dismiss requiring consideration of additional factual material, the court should convert the motion to one for summary judgment and ensure that the prisoner is given proper notification of the conversion. *See Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000).

## C.

Another procedural matter concerns whether dismissal for lack of exhaustion should be made with or without prejudice. Though a dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice, *see Sheldon v. Vermonty,* 269 F.3d 1202, 1207 (10th Cir. 2001), there are exceptions to the rule.

---

[4] Normally, the defendant should raise the exhaustion issue as early as possible in the litigation. If, however, the defendant submits a motion to dismiss after filing an answer, the motion should be treated as a motion for judgment on the pleadings. *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 n.5 (10th Cir. 1998); *see also* Fed. R. Civ. P. 12(c), (h)(2).

*See Fottler v. U.S*., 73 F.3d 1064, 1065 (10th Cir. 1996). For example, when a § 1983 claim is dismissed under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), for failure to invalidate a conviction before bringing the civil-rights action, the dismissal should be without prejudice. If the plaintiff is later successful in overturning his conviction, he is allowed to bring his § 1983 action at that time. *Id.* As we have stated, "[p]articularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable." *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990).

Similarly,

[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit (in the event the administrative claim fails to afford him the desired relief).

*Snider v. Melindez,* 199 F.3d 108, 111-12 (2d Cir. 1999). A dismissal based on lack of exhaustion, therefore, should ordinarily be without prejudice. Nevertheless, the dismissal may constitute a strike for purposes of 28 U.S.C. § 1915(g). *See Jennings v. Natrona County Det. Ctr. Med. Facility*, 175 F.3d 775, 778-81 (10th Cir. 1999) (describing rules applicable to § 1915(g)).

III.

We now apply the substantive law and our procedural determinations to Steele's appeal. He argues that the district court erred in: (1) failing to conclude that the government waived its sovereign immunity with regard to his tort claim; (2) determining that he had not exhausted his administrative remedies for his *Bivens* claim; (3) dismissing his case with prejudice; and (4) dismissing his case without a hearing, because he had the right to confront the witness against him. [5] This court reviews *de novo* the district court's rulings on sovereign immunity and the applicability of an FTCA exception, *Tippett v. United States*, 108 F.3d 1194, 1196-97 (10th Cir. 1997); a prisoner's failure to exhaust under § 1997e(a), *Jernigan*, 304 F.3d at 1032; and the legal sufficiency of plaintiff's *Bivens* claim, *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).

---

[5] In his principal brief, Steele argues that the PLRA exhaustion of remedies requirement is unconstitutional and, in his reply brief, adds a theory that the PLRA three-strikes provision is also unconstitutional. "[A]bsent extraordinary circumstances, we will not consider arguments raised for the first time on appeal. This is true whether an appellant is attempting to raise a bald-faced new issue or a new theory on appeal that falls under the same general category as an argument presented at trial." *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) (citations and quotations omitted). We note, however, that the Supreme Court has twice interpreted and enforced the rule of 42 U.S.C. § 1997e(a) that prisoners must exhaust administrative remedies before filing in federal court. *See Porter,* 534 U.S. at 524-25; *Booth*, 532 U.S. at 739-41 & n.5-6. Further, this court has explicitly rejected a prisoner's equal protection and due process challenges to § 1915(g), founded upon a First Amendment claim of right of access to the courts. *White v. Colorado*, 157 F.3d 1226, 1232 (10th Cir. 1998).

-19-

With direct relevance to Steele's tort claim, 28 U.S.C. § 2680(c) provides that the FTCA does not apply to a "claim arising in respect of . . . the detention of any goods, merchandise, or other property by any . . . law enforcement officer." Steele's claim arose from the detention of his goods by prison employees, who are law enforcement officers. *See Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (applying § 2680(c) to bar claim against prison officials for mishandling property). Accordingly, the government has not waived its sovereign immunity and the district court lacked subject matter jurisdiction to consider the claim. Contrary to Steele's contentions, neither the BOP's suggestion that he take his tort claim to district court if he decided to refuse the settlement offer nor the district court's acceptance of his action for filing amounts to a waiver of sovereign immunity. The district court properly dismissed the tort claim with prejudice.

Concerning the *Bivens* claim, Steele admitted in the district court that he did not exhaust the grievance procedure as related to this claim and he did not contend that prison staff foreclosed his own attempt to file a grievance. The Supreme Court has refused to "'read futility or other exceptions into'" the § 1997e(a) exhaustion requirement. *Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001) (quoting *Booth*, 532 U.S. at 741 n.6). The exhaustion mandate applies even if a prisoner "understood that the claims put forth in [his] complaint were 'non-grievable' under prison policy," *Beaudry*, 331 F.3d at 1166, or if he felt that

-20-

a prison official's statement "frustrated his ability to proceed with administrative remedies," *Yousef*, 254 F.3d at 1221-22. The district court properly rejected Steele's arguments concerning confusion and timing difficulties arising from the BOP's separate tracks for tort and civil-rights claims. The *Bivens* claim was ripe for dismissal under Rule 12(b)(6).

Moreover, under the circumstances of this case, the court was correct in dismissing the *Bivens* claim with prejudice, rather than without prejudice. First, a *Bivens* claim cannot be brought against the BOP, as a federal agency, or the other defendants in their official capacities. *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001). Second, the complaint's allegations concerning the individual defendants do not come close to the necessary direct, personal participation required to establish *Bivens* liability. *See Kite v. Kelley*, 546 F.2d 334, 338 (10th Cir. 1976). Third, factual allegations of merely negligent conduct on the part of defendants do not amount to a constitutional claim. *See Daniels v. Williams*, 474 U.S. 327, 328-31 (1986). Steele's conclusory allegations concerning a conspiracy to deprive him of his property are insufficient to state a claim of constitutional dimensions. The district court was correct in reaching the merits of the case and in deciding to dismiss it with prejudice. We agree with the district court that Mr. Steele cannot frame a valid *Bivens* claim.

Finally, we conclude that the district court's decision to dismiss the action without holding a hearing was well within its discretion, particularly since only questions of law were before the court. We note that there is no right to an oral hearing under Rule 12(b)(6). *Greene v. WCI Holdings Corp*., 136 F.3d 313, 315-316 (2d Cir. 1998). Whether to grant such a hearing is left to the discretion of the district court judge. *Id.* at 316; *cf. Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir. 1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

For the foregoing reasons, we AFFIRM the district court's dismissal of Steele's claims. We have reviewed the submissions captioned "Presentation of Evidence," "Presentation and Clarification," "Memorandum," and "Belated Presentation of Evidence." We decline to accept these filings as supplements to Steele's appellate briefs. *See* Fed. R. App. P. 28 (providing for appellant's submission of a brief and reply brief). Plaintiff is reminded that he must continue making partial payments on court fees and costs previously assessed until they have been paid in full. The dismissal counts as a strike for purposes of the PLRA, 28 U.S.C. § 1915(g). The mandate shall issue forthwith.

02-1492 - *Steele v. Federal Bureau of Prisons*

**HARTZ,** Circuit Judge, concurring:


I join Judge Baldock's opinion, but add a note regarding why I agree with our dismissal with prejudice of the claims for which the district court lacked subject-matter jurisdiction (the FTCA claim and the *Bivens* claims against the Bureau of Prisons and against the individual defendants in their official capacities).

There is substantial authority that a dismissal for lack of jurisdiction must be without prejudice. *See, e.g., Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1486 (Fed. Cir. 1998); *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984). The reason for this practice apparently has been the belief that a dismissal with prejudice has claim-preclusive effects that cannot be afforded a decision by a court without jurisdiction. *See* 9 Wright & Miller, Federal Practice and Procedure § 2373, at 396-98 (2d ed. 1995). *See generally* Stephen B. Burbank, *Semtek, Forum Shopping, and Federal Common Law*, 77 Notre Dame L. Rev. 1027, 1042-46 (2002) (discussing history of Fed. R. Civ. P. 41). (That is not to say, however, that a dismissal without prejudice has no preclusive effects. Under the doctrine of direct estoppel (a species of issue preclusion), a dismissal without prejudice for, say, lack of subject-matter jurisdiction, would still preclude relitigation of the issue of subject-matter jurisdiction in the absence of newly

arising facts or law.  *See* 18 Wright, Miller & Cooper § 4418, at 467-69 (2002); Restatement (Second) of Judgments § 12 cmt. c (1982).)

A recent Supreme Court decision, however, has undermined this view.  In *Semtek Int'l Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 505 (2001), the Court wrote:  "The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."  I would infer that when a court rules that a dismissal is "with prejudice," it is saying only that the claim cannot be refiled in that court. *See id.* at 506; Burbank, *supra*, at 1042.  Whether a dismissal with prejudice has preclusive effects in other courts will depend on additional matters, such as whether the dismissing court passed on the substance of the claim.  *See Semtek* at 501-03; Restatement, *supra*, § 20 cmt. d (court's denominating a dismissal as "with prejudice" ordinarily has no effect on preclusive effect of the dismissal).

Thus, by saying that this dismissal is with prejudice, we mean only that these claims cannot be filed again by Mr. Steele in federal court.  We are not asserting any claim-preclusive effects of our decision in other jurisdictions.  There may be such effects, but they would not derive from our use of the words "with prejudice."  For example, we may sometimes dismiss with prejudice for lack of subject-matter jurisdiction when state law may recognize a cause of action.  Our dismissal with prejudice in such a case might not preclude the plaintiff from

proceeding in state court, even though "[s]tate courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law," *Heck v. Humphrey*, 512 U.S. 477, 488 n.9 (1994).